**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 18-cv-81636-Middlebrooks/Brannon**

HOLLY J. NELSON,

Plaintiff,

v.

THE COMMUNICATIONS CONSULTANTS GROUP, INC., LANDLEASE, INC., and CHRISTOPHER T. MERRELL, individually,

Defendants.

_______________________________________/

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Holly J. Nelson (hereinafter referred to as "Plaintiff"), sues the Defendants, Communications Consultants Group, Inc., and Landlease, Inc. (hereinafter referred to as "The Corporate Defendants"), and Christopher T. Merrell (hereinafter referred to as "Defendant Merrell"), and alleges as follows:

1. This is an action arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Florida Civil Rights Act of 1992 ("FCRA"), Chapter 796.09, Florida Statutes, (coercion), the Florida Whistleblower Act and for other common law claims arising out of sexual harassment and retaliation. This is also an action for the recovery of unpaid overtime compensation owed to Plaintiff pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, as amended ("FLSA."). The amount in controversy exceeds $15,000, exclusive of attorneys' fees and costs.

2. Plaintiff Nelson is a resident of Palm Beach County, Florida. Plaintiff was employed in various positions and fulfilled various duties for the Corporate Defendants.

3. The Corporate Defendants are Florida Profit Corporations which do business in the State of Florida and have their principal place of business located at 319 Clematis Street, Suite 408, West Palm Beach, FL 33401.

4. The Corporate Defendants are interrelated operations and collectively an "employer" as defined by Title VII, the FCRA and Section 760.02(7). Plaintiff was employed by the Corporate Defendants and performed services for all of the related corporate entities.

5. Defendant Merrell is a resident of Palm Beach County, Florida. Defendant Merrell is the Chief Executive Officer and Founder of the Corporate Defendants. Defendant Merrell had ultimate control over the terms and conditions of Plaintiff's employment.

6. Defendant Merrell, who is in his fifties, originally contacted Plaintiff, who is in her twenties, through an online dating website. Defendant Merrell set up an arrangement whereby he compensated Plaintiff to spend time with him. Defendant Merrell, who is married, told Plaintiff that he was separated and getting a divorce. He said he was in love with Plaintiff. In 2014, Defendant Merrell and Plaintiff began a relationship.

7. Defendant Merrell hired Plaintiff to work for him and the Corporate Defendants. Defendant Merrell promised that his divorce was imminent. Eventually, Plaintiff discovered that Defendant Merrell had been lying to her about a divorce. She broke off the relationship. Defendant Merrell thereafter became obsessed and began stalking Plaintiff. He also retaliated against Plaintiff at work ultimately leading to her termination.

## GENERAL ALLEGATIONS

8. On September 1, 2017, Defendant Merrell was told by Plaintiff that she was ending the relationship and sex with him because he had been lying about getting a divorce.

9. Defendant Merrell became obsessively jealous of Plaintiff and sexually harassed her. He demanded to know about her personal life and accused her of cheating. Whenever Defendant Merrell did not get an immediate response from Plaintiff, he became irate and lashed out. Defendant Merrell sent many texts to Plaintiff accusing her of, for example, "f**king around behind my back."

10. Defendant Merrell tried to manipulate and coerce Plaintiff back into a relationship. For example, he sent Plaintiff a text that read "For me when you love someone, you stand by them like I have done. Michelle has loved me and been in love with me. And like you I love her. But I am not in love with her." Plaintiff attempted to ignore Defendant Merrell's communications, but when she did, he interfered with her life and work by social media stalking.

11. As another example of Defendant Merrell's obsession with Plaintiff's personal activities, on September 2, he sent Plaintiff an email that stated:

> "Omg what the f**k is wrong with you. I went to close my pages on chrome from yesterday and your Instagram is private. Is this what we are now? Lol Ok let me go take ya off my snap and shit so you can get on with your life. Jesus Christ Holly wtf. . .. "

12. Defendant Merrell obsessively accused Plaintiff of cheating on him. On other occasions, Defendant Merrell claimed he could not bear to see Plaintiff. For example, on September 5, Defendant Merrell sent Plaintiff a text that stated he "wasn't going to come up to the office because Plaintiff was there." Because Plaintiff reported to Defendant Merrell such behavior was disturbing and interfered with her ability to work.

13. Defendant Merrell continue to send emails to Plaintiff asking if she was in love with him. He claimed they could be back together after his divorce was final. Defendant Merrell sent texts demanding to know whether Plaintiff was going to date other people.

14. Defendant Merrell required that Plaintiff report to him if she was going to date. Defendant Merrell transferred money into Plaintiff's account after she reluctantly agreed to comply with this demand. Defendant Merrell said the company would be paid back from Plaintiff's commissions check.

15. On September 6, Defendant Merrell sent Plaintiff a text about Hurricane Irma. He promised he would get a divorce by the end of the year. Defendant Merrell told Plaintiff he would give Plaintiff a raise in 2018 so she could afford her apartment.

16. Defendant Merrell constantly contacted Plaintiff and demanded that she show him attention and obedience. For example, on September 13, Defendant Merrell told Plaintiff "don't lose me."

17. On September 15, Defendant Merrell sent Plaintiff flowers.

18. On September 16, Defendant Merrell asked Plaintiff to send him a picture.

19. On September 17, Defendant Merrell met Plaintiff at the office. He gave Plaintiff an ultimatum regarding whether she would enter a relationship with him. He told Plaintiff "Holly this is it! Is this okay?" Defendant Merrell tried to force Plaintiff to say "I love you." Plaintiff responded that she could not say it.

20. On September 18, Defendant Merrell became hysterical after Plaintiff did not respond to a "good morning" text. He told Plaintiff she should look for another job. He texted her later "so when you feel like it let's discuss your work future."

21. On September 19, Defendant Merrell reversed his emotions and told Plaintiff "Baby, I love you." Defendant Merrell was told by Plaintiff that he needed to move on. Later, Defendant Merrell sent Plaintiff a text calling her a "bitch."

22. On September 22, Defendant Merrell manipulated Plaintiff into meeting him and having sexual relations. Defendant Merrell gave Plaintiff an advance check for a commission she was scheduled to receive. Plaintiff received a text from Defendant Merrell telling her that "she had earned it."

23. On September 25, Plaintiff told Defendant Merrell she would absolutely not see him anymore. She told Defendant Merrell that she felt terrible after the last sexual encounter that had occurred followed by an advance on her commissions.

24. In October, Defendant Merrell demanded that Plaintiff come see him. Plaintiff complied so that Defendant Merrell would not punish her at work. Defendant Merrell told Plaintiff the he just wanted to see her and talk to her. He said Plaintiff's raise was "still in the works."

25. On October 2, Defendant Merrell sent Plaintiff a sexual cartoon. He told her he was "upset" with her for refusing to have sex with him. Defendant Merrell said things would be different if they traveled and she went on business trips with him. Plaintiff said no that he would just try to have sex.

26. On October 5, Defendant Merrell said he was going to come to Plaintiff's office. Defendant Merrell asked Plaintiff "if she was going to be naked?" Plaintiff said no and please not to come.

27. During the week of October 12, Defendant Merrell came uninvited to Plaintiff's apartment and accused her of having a man in her apartment. At this point, Defendant Merrell began to physically stalk Plaintiff.

28. In mid-October, Defendant Merrell sent Plaintiff roses for doing a great job on the launch party and gave her money. Defendant Merrell told Plaintiff that she would have to pay it back.

29. On October 16, Defendant Merrell told Plaintiff that he did not trust her. He said she was causing him agony by not being with him. He told her he was upset with her for not texting him "good morning" every day.

30. On October 17, Defendant Merrell and Plaintiff had a telephone conference with an SEO expert about the Landlease website. Plaintiff's back hurt and she leaned up against a chair. Defendant Merrell blew up and yelled "Holly, sit down!" He pointed to the chair and demanded that she sit. After the telephone conference ended, Defendant Merrell and Plaintiff had a heated argument about Defendant Merrell's abusive behavior.

31. On October 21, Defendant Merrell confirmed to Plaintiff that she would receive a raise.

32. On October 23, Defendant Merrell sent a text to Plaintiff asking if he could come to her apartment. Plaintiff told him she was in New York City. Defendant Merrell threw another temper tantrum and accused Plaintiff of "going to New York for men."

33. On October 24, Defendant Merrell sent Plaintiff pornographic videos featuring two women at a local strip club that had been circulated around town by business men.

34. On October 29, Defendant Merrell sent Plaintiff numerous texts accusing her of "seeing men" in New York City. He obsessed that Plaintiff "did not care about him anymore."

35. On November 1, Defendant Merrell treated Plaintiff in a hostile manner at work because he was still angry about her trip to New York City. Defendant Merrell told Plaintiff that she had better be careful since his "IT guy" was able to access all of CCG employee emails,

including personal emails, for his inspection and review. When Plaintiff said that was not fair, Defendant Merrell said it was "his company and he could do what he wanted!"

36. On November 5, Defendant Merrell told Plaintiff for the first time that he thought her work quality and attitude had suffered. Plaintiff told Defendant Merrell that he knew this was absurd and that he was angry only because she would not give in to him. Plaintiff begged Defendant Merrell not to bring his anger and resentment into the work relationship. Defendant Merrell in response just smiled.

37. In November, Defendant Merrell criticized Plaintiff's work hours which had never been an issue before the sexual relationship had ended.

38. On November 7, Defendant Merrell told Plaintiff he was having a new assistant sleep over. He said he did not want Plaintiff to think he was dating other people. Plaintiff knew Defendant Merrell was just trying to make her jealous and reminded him that he was free to do as he wished.

39. On November 8, Plaintiff asked for a week's vacation to participate in a beauty pageant. She requested an advance on commissions for the expenses of the pageant. Defendant Merrell told Plaintiff he missed her and to tell him "she missed him back." Plaintiff reluctantly reciprocated for fear of punishment. After Plaintiff said "she missed him" in a perfunctionary manner, Defendant Merrell said "good girl!" He then gave Plaintiff a hug and stuck his nose in her neck and sniffed it while making a growling noise. Plaintiff was perplexed by this behavior.

40. On November 14, Defendant Merrell had flowers delivered to Plaintiff.

41. On November 20, Defendant Merrell was caught spying on Plaintiff in the parking lot of her apartment complex.

42. On November 21, Defendant Merrell told Plaintiff she would not be getting a raise. He warned Plaintiff that he "felt something was going on." Plaintiff told Defendant Merrell that nothing was going on and that she was busy driving for Uber to make extra money. Defendant Merrell told Plaintiff she did not have to drive for Uber and that he would give her another advance on commissions. He also told Plaintiff that she would get another $5,000 commission check now, and a $5,000 commission check at the end of the year.

43. On November 22, Plaintiff discovered that Defendant Merrell had excluded her from the company Thanksgiving email. Defendant Merrell told Plaintiff he excluded her because she was "so damn mean." He texted Plaintiff "goodnight."

44. On November 24, Defendant Merrell requested that Plaintiff send him a picture in her pageant gown.

45. On November 27, Defendant Merrell was caught eavesdropping on Plaintiff while listening outside her apartment door. Defendant Merrell told Plaintiff that he observed a man leave her apartment. Defendant Merrell described what that man looked like giving an estimate of his height and weight.

46. On November 28, Defendant Merrell called Plaintiff and accused her of lying. Defendant Merrell demanded to know if she had sex with the man who was at her apartment. Plaintiff refused to answer the question. Defendant Merrell kept calling and texting Plaintiff over and over demanding an answer. Plaintiff was scared that night and did not stay in her apartment.

47. On November 28, Defendant Merrell sent Plaintiff a text stating, "Don't worry. This won't affect your job or your pay if only you are honest with me. I will never let work get in the way of my personal life or vice versa. But you will talk to me about this!"

48. In late November and early December, Defendant Merrell sent Plaintiff many aggressive text messages hysterically accusing her of betrayal, such as "You took my money." "You abused the job hours and took more money." And "then after ya got what ya wanted poof!"

49. Defendant Merrell told Plaintiff as a veiled threat "Don't worry, your job is secure. But it will be a real job."

50. Oddly enough, during this time period, in late November, Defendant Merrell continued to send Plaintiff bizarre texts such as "Goodnight sweetie. Oh shit, I forgot. I am not your dude anymore. Replaced."

51. On November 30, Defendant Merrell sent Plaintiff dozens of snapchat messages including a partially nude photo that Defendant Merrell had taken without her knowing as she was changing clothes.

52. On December 1, Defendant Merrell sent Plaintiff a text message threatening to hold back her commission check of $5,000. He then relented and transferred $1,000 into her account, and then another $2,500. He told Plaintiff "I help you screw guys." Plaintiff, of course, was humiliated and sickened by Defendant Merrell's conduct, but needed to pay the rent for her apartment and living expenses.

53. On December 1, Defendant Merrell sent Plaintiff text messages stating that there would be "no more business favors . . . because [you] have taken up with another man."

54. In early December, Defendant Merrell sent Plaintiff texts that became more hysterical and crazed such as "I don't help you screw guys that's not my point. You do that well on your own. But you f**k them knowing I love you. . . . You have no idea about what you are doing with these decisions. You have thrown me away and you don't see what or who I am. You get what you need. I get…wait for it. Wait. Zero!"

55. On December 4, Defendant Merrell sent Plaintiff dozens of snapchat messages and texts telling her that he would find comfort in the arms of another woman.

56. On December 4, Defendant Merrell sent Plaintiff an email that he characterized as "a personal loan notice." Defendant Merrell told Plaintiff that the advances on commissions he would now call "a personal loan" and that she would have to repay him directly after the company paid her commissions.

57. On December 5, in preparation for an evaluation, Defendant Merrell reminded Plaintiff not to reveal how she divided up her working time among the companies.

58. On December 6, Defendant Merrell wanted to meet with Plaintiff in person to discuss "business going forward." He handed Plaintiff a document entitled "US" and told her they would discuss business later. Defendant Merrell told Plaintiff that he did not trust her. He claimed that it was best for Plaintiff to be with him. He demanded that Plaintiff tell him whether she was in love with him. He promised that if she told him she loved him, all would be forgiven. He said he would finalize the divorce and that he and Plaintiff would "travel the world." Plaintiff responded that they had already discussed all of this, that Defendant Merrell had lied and that she was not in love with him. She said she had felt dirty during the entire relationship because he was married. Defendant Merrell pleaded with Plaintiff claiming that his divorce would be final in a few weeks.

59. On December 7, Defendant Merrell sent Plaintiff a voicemail on snapchat that said he did not want her at the company Christmas party.

60. On December 11, Defendant Merrell sent Plaintiff a snapchat message asking her if she was in love with "the new guy she was dating." He asked Plaintiff if she hated him.

61. On December 12, Defendant Merrell sent Plaintiff a snapchat message that stated

"no need for lunch and no need for discussion anymore. I wish you luck but you were right and I was wrong about you."

62. On December 19, Defendant Merrell sent Plaintiff an email entitled "We need a meeting." Defendant Merrell told Plaintiff to change her LinkedIn profile to state she was only an employee of CCG.

63. On December 21, Defendant Merrell sent Plaintiff an email stating that he did not trust her "personally or professionally."

64. On January 1, 2018, Defendant Merrell demanded that Plaintiff provide him with a spreadsheet detailing her work hours and duties. Defendant Merrell told Plaintiff that he wanted her to only think of the Matago job in 2018. As such, he said he wanted Plaintiff to write up a new job description.

65. On January 11, Defendant Merrell demanded a meeting with Plaintiff. At the meeting, Defendant Merrell told Plaintiff that again he could not trust her personally or professionally. Defendant Merrell accused Plaintiff of lying to him and said it had "bled into [her] business life." Defendant Merrell became then became hysterical and said Plaintiff had lied about "bringing a guy into the apartment building," and he was uncomfortable with Plaintiff at work. Plaintiff told Defendant Merrell that ever since she had stopped dating him, he had become abusive and was unhappy with everything she did. Plaintiff reminded Defendant Merrell that he had cancelled her raise because she broke off the relationship. Defendant Merrell became hysterical and told Plaintiff that "it was his company" and he could not work with her and "to get the f**k out."

66. On January 12, after Defendant Merrell had terminated Plaintiff, he called her and threatened prosecution. In particular, Defendant Merrell said that he had called an attorney and

had been instructed to go to the Sheriff's office and file a restraining order against Plaintiff. Defendant Merrell also tried to tempt Plaintiff by saying he had a "check for her from CCG."

67. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's charge was dual filed with the Florida Commission on Human Relations ("FCHR"), pursuant to the work sharing agreement between the EEOC and FCHR. The EEOC has issued a Notice of Rights letter permitting Plaintiff to file her action under Title VII. This action has been timely commenced under Title VII and the FCRA.

## COUNT I - SEXUAL HARASSMENT

68. Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 67 above. This is an action under Title VII and Chapter 760.10 et. seq, the Florida Civil Rights Act of 1992 ("FCRA") for both hostile work environment sexual harassment and tangible employment action sexual harassment. The Corporate Defendants were individually and collectively an "employer" of Plaintiff as defined by Title VII and the FCRA.

69. During Plaintiff's employment with the Corporate Defendants, she was subjected to sexual harassment by Defendant Merrell, which affected the terms, conditions, and privileges of her employment and was of such a severe and pervasive nature so as to alter the conditions of her employment and create an abusive and hostile work environment. The Corporate Defendants were on actual notice of the sexual harassment, but failed to take prompt remedial action.

70. The Corporate Defendants are directly liable for the sexual harassment since, among other reasons, they failed to take prompt and effective remedial action. Alternatively, because Plaintiff suffered adverse actions, such as denial of a raise and later termination after she

refused Defendant Merrell's continued demands to for a sexual relationship, the Corporate Defendants are automatically liable for the sexual harassment.

71. As a result of the wrongful employment practices complained of above, Plaintiff has been deprived of equal employment opportunity, has suffered emotional pain and suffering, inconvenience, mental anguish, and other harms and losses.

WHEREFORE, Plaintiff demands judgment for damages against the Corporate Defendants for including, but not limited to, lost wages, benefits and other compensation in the past and future, together with prejudgment interest on the outstanding obligation, or reinstatement, together with all awardable compensatory damages, including but not limited to damages for emotional distress and harm, and punitive damages, attorneys' fees and costs and such other relief as may be appropriate under Title VII and the FCRA, Chapter 760.10, sections 760.01-760.11.

## COUNT II – RETALIATION

72. Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 67 above. The Corporate Defendants were collectively an "employer" of Plaintiff as defined by Title VII and the FCRA.

73. At all times material to this action, there has been in full force and effect a provision of Title VII and Florida law, Chapter 760.10 et seq, that prohibits discriminatory and retaliatory employment practices against employees because they have opposed unlawful employment practices and have complained of such unlawful practices.

74. Plaintiff told Defendant Merrell, the Corporate Defendants' CEO, that she would not continue to have sexual relations with him and that he needed to stop trying to induce her

into sexual relations. Accordingly, Plaintiff engaged in protected opposition conduct and was protected against retaliation under the applicable civil rights statutes.

75. Plaintiff eventually rejected Defendant Merrell's unlawful harassment, manipulation and exploitation of a sexual nature. In response, Plaintiff was demoted, had her raise cancelled, she was scrutinized and intimidated and eventually terminated.

76. As a result of the unlawful employment practices complained of above, Plaintiff has been deprived of equal employment opportunity, has suffered emotional pain and suffering, inconvenience, mental anguish and other harms and losses.

WHEREFORE, Plaintiff demands judgment for damages against the Corporate Defendants for including, but not limited to, lost wages, benefits and other compensation in the past and future, together with prejudgment interest on the outstanding obligation, and/or reinstatement, together with all other compensatory damages, including but not limited to damages for emotional distress and harm, and punitive damages, attorneys' fees and costs and such other relief as may be appropriate under Title VII and the FCRA, Chapter 760.10, section 760.01-760.11.

**COUNT III – COERCION/EXPLOITATION**

77. Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 67 of the Complaint.

78. Florida Statutes, Chapter 769.09 creates, among other things, a civil cause of action against a person who coerces, or attempts to coerce, another into sexual activity. Defendant Merrell attempted to coerce, and in fact coerced Plaintiff into sexual activity by promising her financial rewards and money, in particular, by withholding or paying advances on the commissions she would be entitled to.

79. At all times material to Defendant Merrell's coercive conduct, he was operating within, or incidental to, the course and scope of his employment as the CEO of the Corporate Defendants.

80. Because of Defendant Merrell's coercive threats, promises of financial rewards, and his coercive exploitation of Plaintiff's human needs, Plaintiff has been emotionally damaged since Defendant Merrell was able to wield his power and influence over Plaintiff's career.

81. Defendant Merrell attempted to coerce Plaintiff into sexual activity in one or more of the following ways: a. Domination of her needs through exploitive techniques; b. Inducement; c. Promise of greater financial rewards; and d. Exploitation of a vulnerable economic condition or situation.

82. Because of Defendant Merrell's illegally coercive actions, he has violated the provisions of Florida Statutes, §769.09. Plaintiff has suffered damages and seeks compensatory and punitive damages against the Corporate Defendants and Defendant Merrell.

WHEREFORE, Plaintiff demands judgment in her favor against the Corporate Defendants and Defendant Merrell and an award of compensatory and punitive damages and attorneys' fees and costs together with any further relief that is appropriate and just.

**COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

83. Plaintiff realleges the allegations of paragraphs 1 to 67 as if set forth fully herein.

84. Defendant Merrell's conduct that is described in the foregoing paragraphs constitutes extreme and outrageous conduct and behavior.

85. At all times material to Defendant Merrell's extreme and outrageous conduct, he was operating within, or incidental to, the course and scope of his employment as the CEO of the Corporate Defendants.

86. This conduct was perpetrated by Defendant Merrell with a total disregard of the severe emotional distress that would be caused to Plaintiff.

87. Defendant Merrell maliciously embarked on a course of conduct intended to cause Plaintiff to suffer mental and emotional distress, tension and anxiety. Defendant Merrell knew that Plaintiff was particularly vulnerable to losing her residence and paying her bills. Defendant Merrell preyed upon Plaintiff's vulnerability and economic insecurity. After Defendant Merrell terminated Plaintiff, he threatened to file legal actions against her.

88. Plaintiff has suffered damage to her personal and business reputation and standing, has been placed under undue strain and burdens, and forced to endure extreme embarrassment. She has suffered, and will continue to suffer, great mental strain and anguish and severe emotional distress.

89. By reason of the foregoing and as a direct and proximate result of Defendant Merrell's conduct, Plaintiff is entitled to compensatory and punitive damages against Defendants in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment in her favor against Defendants and awarding compensatory damages together with any further relief that is appropriate and just.

## COUNT V – NEGLIGENT RETENTION AND SUPERVISION

90. Plaintiff realleges and incorporates herein paragraphs 1 through 67 above.

91. While employed by the Corporate Defendants, Plaintiff was sexually exploited and coerced by the Defendant Merrell causing her permanent injury of an emotional nature. Defendant Merrell intentionally inflicted emotional distress upon Plaintiff.

92. Plaintiff was exposed to the Defendant Merrell as a direct consequence of his agency relationship with the Corporate Defendants.

93. Plaintiff was within a zone of risk reasonable foreseeable by the Corporate Defendants.

94. The Corporate Defendants owed Plaintiff a duty to exercise reasonable care in the behavior of its management.

95. The Corporate Defendants had actual and/or constructive notice that Defendant Merrell had engaged in sexual misconduct against Plaintiff during the term of his agency relationship with the Corporate Defendants.

96. The Corporate Defendants breached their duty to Plaintiff by negligently responding to Defendant Merrell after receiving actual and constructive notice of his unfitness to serve.

97. As a direct and proximate result of the negligence of the Corporate Defendants, Plaintiff has sustained the following past and future damages: a. mental pain; b. severe emotional distress; c. embarrassment; d. humiliation; e. mental anguish; f. loss of the capacity for the enjoyment of life; g. impairment of working ability; h. loss of dignity; and i. loss of diminution of earning or earning capacity.

WHEREFORE, Plaintiff demands judgment for compensatory damages against the Corporate Defendants, in an amount within the jurisdictional limits of this Court of more than $15,000.00, plus costs and for such other relief as to be determined by the Court.

**COUNT VI – FLORIDA WHISTLEBLOWER ACT**

98. Plaintiff realleges and incorporates herein paragraphs 1 through 67 above.

99. This is an action under the Florida Whistleblower Act. All times material to this action, the Corporate Defendants were collectively an "employer" of Plaintiff as defined by the Florida Whistleblower Act, Section 448.101-448.105 (Fla. Stat.).

100. At all times material to this action, Plaintiff was an "employee" of the Corporate Defendants pursuant to the Florida Whistleblower Act, Section 448.101(2).

101. During the term of Plaintiff's employment, she objected to an activity and practice of Defendant Merrell, which was in violation of the Florida Civil Rights Act of 1992, Title VII of the Civil Rights Act of 1964, as amended, and Florida's Anti-Coercion Law. In particular, Plaintiff objected to sexual coercion, sexual harassment, retaliation and the creation of a hostile work environment because of her sex.

102. Plaintiff voiced her specific objections to the Corporate Defendants' CEO, Defendant Merrell.

103. The Corporate Defendants took retaliatory personnel actions against Plaintiff because she had objected to the illegal workplace behavior, including, but not limited to, salary reduction, a refusal to give raises, removal of job duties, threats and termination.

WHEREFORE, Plaintiff requests compensatory damages for lost wages, benefits and other remuneration and all other compensatory damages allowable under Florida law against the Corporate Defendants. Plaintiff also requests that the Court award reasonable attorneys' fees, costs and expenses associated with this action pursuant to section 448.104.

**COUNT VII - FLSA (Overtime Compensation)**

104. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 7 above.

105. Jurisdiction in this Court is proper as Plaintiff's claim is brought pursuant to the FLSA to recover unpaid overtime, liquidated damages and reasonable attorneys' fees and costs. Jurisdiction over this action is founded upon §216(b) of the FLSA and 28 U.S.C. §1337.

106. Defendant Merrell, the CEO of the Corporate Defendants, was an "employer" of Plaintiff as defined by the FLSA since he acted directly or indirectly in the interest of the Corporate Defendants in relation to Plaintiff. During the term of Plaintiff's employment, Defendant Merrell was involved in the day-to-day operations of the Corporate Defendants and had direct responsibility for the supervision of Plaintiff.

107. Under the FLSA, and the during the term of Plaintiff's employment, the Corporate Defendants were each, and together, an enterprise engaged in commerce or in the production of goods for commerce and had employees engaged in commerce or in the production of goods for commerce and whose annual gross volume of sales made or business done was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated). See 29 U.S.C. § 203s(1)(A).

108. In addition to the enterprise coverage of the Corporate Defendants under the FLSA, Plaintiff is a covered individual under the FLSA, in that she was (1) engaged in the production of goods for commerce or (2) engaged in commerce, defined as trade, commerce, transportation, transmission, or communication among the several States or between Florida and any place outside thereof. For example, Plaintiff's job in marketing required that she constantly engage in the foregoing forms of communication.

109. The acts and omissions that give rise to this action occurred in Palm County, Florida. Defendant Merrill made all decisions regarding Plaintiff's compensation and hours of work. Plaintiff worked for the Corporate Defendants in various administrative, sales and marketing positions that were not exempt from the overtime requirements of the FLSA.

110. In many workweeks during the relevant period Plaintiff worked in excess of forty (40) hours per week for the Corporate Defendants. In those workweeks, Plaintiff was not paid overtime compensation by Corporate Defendants as is required by §207 of the FLSA.

111. At all times relevant to this action, the Defendants failed to comply with 29 U.S.C. §§201-209, because Plaintiff performed services for the Corporate Defendants for which no provision was made by the Defendants to properly pay Plaintiff for all hours worked in excess of forty (40) within a workweek.

112. As a direct and proximate result of Defendants' failure to pay overtime compensation, Plaintiff has been damaged in the loss of wages due, and has incurred and is incurring costs and reasonable attorneys' fees.

113. The Defendants' failure to pay overtime was deliberate, willful and without good faith or any legal justification. Consequently, Plaintiff is entitled to liquidated damages in an amount equal to the underpayment of overtime compensation.

WHEREFORE, Plaintiff demands judgment against the Corporate Defendants and Defendant Merrell for compensatory damages (unpaid overtime compensation), liquidated damages (double damages) and attorneys' fees and costs pursuant to the FLSA, and such other relief as this Court deems just and proper.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL COUNTS.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 14, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and that e-mail notification of this filing was sent to:. Arthur T. Schofield, Artthur T. Schofield, P.A., Via Jardin, 330 Clematis Street, Suite 207, West Palm Beach, FL 33401, aschofield@flalabor.com.

Ronald W. Fraley
Florida Bar No.: 0747025
The Fraley Firm, P.A.
412 East Madison Street, Suite 1213
Tampa, Florida 33602
Primary Email: rfraley@fraleylawfirm.com
Secondary Email: phuret@fraleylawfirm.com
Telephone: (813) 229-8300
Attorney for Plaintiff